ROSEMARY LEDET, Judge.
| defendants, RSUI Indemnity Company (“RSUI”) and Westchester Surplus Lines Insurance Company (“Westchester”) appeal the partial motion for summary judgment granted in favor of the plaintiff, Orleans Parish School Board (“OPSB”), on the issue of business income and extra expense coverage. For the reasons that follow, we reverse and remand.

FACTUAL AND PROCEDURAL HISTORY

OPSB retained Aon Risk Services of Louisiana (“Aon”) to obtain property insurance and other coverages for the 2004-2005 and 2005-2006 policy periods. The annual policy periods commenced on the first day of May. OPSB properties sustained damage due to Hurricane Katrina, which made landfall in New Orleans on August 29, 2005, and its aftermath. During the relevant time period, OPSB was covered by four levels of insurance: 1) Lexington Insurance Company (“Lexington”) provided the primary level, up to $50 million per occurrence; 2) Clarendon Insurance Company (“Clarendon”) and Essex Insurance Company (“Essex”) shared the first excess layer of $25 million per occurrence; 3) | ¡.Westchester provided the second excess layer of $25 million; and 4) RSUI provided the upper excess layer of $100 million, per occurrence. In total, OPSB obtained $200 million in “per occurrence” coverage for property and other items valued on the Statement of Values at about $782 million.
When OPSB submitted its preliminary claim for business income and extra ex *726 pense in 2006, its insurers denied coverage for these elements of loss. OPSB subsequently brought the instant suit against its primary and excess insurers for losses sustained in connection with Hurricane Katrina.
OPSB’s action against Lexington was dismissed with prejudice as a result of a compromise agreement reached between those parties. In July 2010, OPSB filed a partial motion for summary judgment on the issue of business income and extra expense coverage. All four excess insurers opposed the motion and filed cross motions for partial summary judgment on the same issues. On October 15, 2010, a hearing was held on the motions, and the trial court took the matter under advisement. On August 18, 2011, the trial court issued its judgment, and reasons for judgment, granting partial summary judgment in favor of OPSB finding business income and extra expense coverage and denied the excess insurers’ motions for partial summary judgment.
Subsequently, the excess insurers filed motions for new trial. Those motions were denied on September 19, 2011. The instant appeal followed. Since the initial filing of this appeal, Essex and Clarendon settled with OPSB. The remaining | Sappellants are Westchester and RSUI (hereinafter collectively referred to as “Excess Insurers”).

STANDARD OF REVIEW

Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 547. Under La. C.C.P. art. 966, a motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” Kimpton Hotel & Restaurant Group, Inc. v. Liberty Mut. Fire Ins. Co., 07-CA-1118, 07-CA-1209, 07-C-1310, p. 3 (La.App. 4 Cir. 12/19/07), 974 So.2d 72, 75, citing La. C.C.P. art. 966(B).
Whether an insurance policy provides for or precludes coverage, as a matter of law, is an issue that can be resolved within the framework of a motion for summary judgment. Sumner v. Mathes, 10-438, p. 6 (La.App. 4 Cir. 11/24/10), 52 So.3d 931, 935, writs denied, 10-2824, 11-0016 (La.3/4/11), 58 So.3d 476. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Sher v. Lafayette Ins. Co., 07-2441, 07-2443, p. 5 (La.4/8/08), 988 So.2d 186, 192. The court’s responsibility in interpreting insurance contracts is to determine the parties’ common intent. Id. Words and phrases used in an insurance policy are to be |4construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. Id., 07-2441, 07-2443 at p. 5, 988 So.2d at 193. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Id.

DISCUSSION

On appeal, the Excess Insurers specify three assignments of error. Their first assignment of error, which we find disposi-tive, is that the trial court erred in concluding that the excess insurance policies provide blanket coverage for business income and extra expense, when both poli *727 cies limited any coverage to items listed and values stated on the Statement of Values filed with the Excess Insurers. The Excess Insurers further assert that OPSB’s Statement of Values failed to list business income and included only $5 million for extra expense.[1]
OPSB countered by noting that the Excess Insurers’ policies are “follow form” policies. OPSB asserts that the underlying policy issued by Lexington provides $50,000,000 in coverage for all risks of direct physical loss or damage, including blanket coverage for business income and extra expense. OPSB further asserts that the Excess Insurers’ policies do not specifically address or exclude | ^business income or extra expense coverage, and they both follow the form of the Lexington policy.
 A following-form policy of excess liability insurance “follows” or adopts the conditions and agreements of the underlying primary liability insurance policy. Rivere v. Heroman, 96-1568, p. 2 (La.App. 4 Cir. 2/5/97), 688 So.2d 1293, 1294; State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat’l Union Fire Ins. Co. of La., 10-0689, pp. 10-11 (La.App. 1 Cir. 2/11/11), 56 So.3d 1236, 1244, writ denied, 2011-0849 (La.6/3/11), 63 So.3d 1023. Unless there is an express exception to the form of the underlying insurance, the excess carrier in a follow form policy must act according to the underlying insurance policy’s terms. Toston v. Nat’l Union Fire Ins. Co. of Louisiana, 41,567, p. 5 (La.App. 2 Cir. 11/3/06), 942 So.2d 1204, 1207. Thus, an excess carrier is permitted to provide exceptions to coverage provided in a primary policy. Orleans Parish School Bd. v. Lexington Ins. Co., 11-1753, p. 5 (La.App. 4 Cir. 6/13/12), 95 So.3d 1205, citing Robichaux v. Randolph, 563 So.2d 226, 228 (La.1990).
The Excess Insurers acknowledge that the policies followed the Lexington policy form, except for conditions and limitations stated in the policies, which is evidenced by the Maintenance of Primary Insurance clauses and the Limit of Liability endorsements. The Excess Insurers’ Maintenance of Primary Insurance clauses provided in the policies state that “this Policy is subject to the same warranties, terms and ' conditions [as the primary insurer] (except as regards the premium, the amount and limits of liability....” (Emphasis added). Further, the | ^Excess Insurers’ Limit of Liability endorsements state that “This endorsement changes the policy. Please read it carefully.” The Westchester Limit of Liability endorsement provides in part:
The following special terms and conditions will apply to this policy:
[[Image here]]
2. The premium for this policy is based upon the Statement of Values on file with the Company. In the event of loss, liability of the Company shall be limited to the least of the following:
a. the actual adjusted amount of loss, less applicable deductible(s);
*728 b. the total stated amount for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s);
c. the Limit of Liability or amount of insurance shown on the face of this policy.
(Emphasis added). The RSUI Limit of Liability endorsement states in part:
This endorsement modifies Insurance provided under the following:
ALL COVERAGE PARTS
It is understood and agreed that the following special terms and conditions apply to this policy:
1. In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one “occurrence”:
a. The actual adjusted amount of the loss less applicable deductible and primary and underlying excess limits;
b. 100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or
|7c. The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.
2. Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy.
3.The premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy.
(Emphasis added).
The Excess Insurers argue that the language from their respective Limit of Liability forms creates an express exception to the underlying Lexington policy. They note that the Statement of Values, referenced in the policies, which was submitted by OPSB, listed a $5 million value for “Extra Expense” and did not list “Business Income.” Thus the Excess Insurers argue that their liability is limited to $5 million for extra expense and that business income is excluded. However, the trial court held that there is nothing in any of the excess policies to indicate that coverage for business income and extra expense has been excluded and although business income is not expressly listed on the Statement of Values, there is still coverage. We disagree.
Generally courts look at the language of an insurance policy as a whole to determine whether it provides for scheduled or blanket coverage. Rainbow USA, Inc. v. Crum & Forster Specialty Ins. Co., 711 F.Supp.2d 655, 665 (E.D.La.2010). A scheduled policy is one in which “each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to loss affecting such property is determined independently of the other items of property.” Id. citing 12 Couch on Ins. § 175.90. A blanket policy, | ^however, is one in which coverage “attaches to, and covers to its full amount, every item of property described in it.” Id. citing 12 Couch on Ins. § 172.72.
The Fifth Circuit, in Fair Grounds Corp. v. Travelers Indem. Co. of Illinois, 99-301 (La.App. 5 Cir. 9/28/99), 742 So.2d 1069, considered a policy with a similar *729 Limit of Liability form as in the Excess Insurers’ policies in the instant case. The Fifth Circuit noted that references in the policy such as “statements of values on file with us” meant that the policies were scheduled, rather than blanket policies. Id., 99-301 at p. 4, 742 So.2d at 1072. The Court held that in the event of loss of a listed property, the insurers would only pay the value stated for that item on the file list, even if the item was worth more than its listed value. Id. The Court further noted that under a scheduled policy only listed risks are insured, and then only for the listed value. Id., 99-301 at p. 8, 742 So.2d at 1074.
Similar to the Fair Grounds case, we find that the Excess Insurers’ policies in the instant case use specific language that limits their liability to items and coverages only listed on the Statement of Values. However, the Court finds that a genuine issue of material fact exists as to whether the Statement of Values the Excess Insurers rely on to deny business income and extra expense coverage were prepared for the 2005-2006 excess policies. The Statement of Values filed in the record indicates that it is from a 2003-2004 policy period and it is specifically dated February 28, 2003. According to the affidavit of James Lawler, a named defendant in the instant case and an Aon manager who served as the property and insurance broker for the OPSB for the 2004-2005 and 2005-2006 policy periods, |9he procured the OPSB policies using a Statement of Values signed by the OPSB Chief Financial Officer, Robert Peters, on May 1, 2004. However, the 2003 Statement of Values is not signed. Additionally, the Excess Insurers produced affidavits from the underwriters of the Lexington, West-chester and RSUI policies that reference an “Exhibit B” as the Statement of Values created by OPSB on file with the company. The exhibits to these affidavits are not in the record. Further, the OPSB argues that the document in the record is not an accurate Statement of Values because of later endorsements on the policy, which add portable buildings and additional equipment based on a schedule on file that is dated in 2005 after the policy was issued. Thus, factual questions remain regarding the applicable statement of values.
An issue is considered “genuine” if reasonable persons could disagree. Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 20 (La.12/16/11), 79 So.3d 987, 1002, reh’g denied (Jan. 20, 2012), cert. denied, 11-1252, — U.S. -, 133 S.Ct. 30, 183 L.Ed.2d 677, 2012 WL 1358843 (U.S. June 25, 2012). A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Id. If there is any doubt as to a dispute regarding a genuine issue of material fact it must be resolved against granting the motion and in favor of a trial on the merits. Id., 11-0097 at pp. 20-21, 79 So.3d at 1002.
Therefore, we reverse the portion of the trial court’s judgment granting OPSB’s partial motion for summary judgment on the issues of business income and extra expense.
| ^Additionally, the Excess Insurers seek partial summary judgment that the excess policies provided no coverage for business income and up to $5 million in extra expense coverage. An appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to the review of the final judgment when an unrestricted appeal is taken. Alexander v. Palazzo, 08-1541, p. 6 (La.App. 1 Cir. 2/13/09), 5 So.3d 950, 953. However, the issues of material fact as to the applicable statement of values preclude summary judgment in their favor. Therefore, their request for relief is denied.

*730
DECREE

For the foregoing reasons, we reverse the portion of the trial court’s judgment granting OPSB’s partial motion for summary judgment on the issues of business income and extra expense and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. The Excess Insurers’ remaining assignments of error allege:
1. that even if the excess policies were intended to follow the primary policy form without deviation, the Lexington policy also limited coverage to items listed and values stated on the Statement of Values, and Lexington’s inclusion of a coverage form for Business Income and Extra Expense combined does not eliminate the specific coverage limitations provide in the policy and;
2. that the trial court erred in failing to recognize the Louisiana rule, adopted by the Louisiana Supreme Court and this Court, that when the amount of needed coverage is particularly within the knowledge of the insured, the insured has the duty to provide the correct amount to be included in an insurance contract.