ROSEMARY LEDET, Judge.
| ¶ This is a declaratory judgment action seeking a determination that the parties had no agreement to arbitrate their underlying contractual dispute. The parties are Delta Administrative Services, L.L.C. (“DAS”) and Limousine Livery, Ltd. (“LLI”). DAS commenced this action against LLI seeking not only a declaratory judgment, but also an injunction to prevent LLI from proceeding with the arbitration proceeding that it had commenced. From the trial court’s judgment dismissing DAS’s declaratory judgment action and denying its request for an injunction, DAS appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Effective January 2010, DAS and LLI entered into an Administrative Services Contract (the “Agreement”) for DAS to provide payroll services and human re *908 sources advice to LLI.[1] The Agreement was a form contract that DAS was using at the time it entered into the relationship with LLI. Before sending the Agreement to LLI, David Lawrence, DAS’s owner and manager, customized the [ ¿form contract to conform to the agreed-upon arrangement that he had discussed with Aaron Dirks, LLI’s president. The topics they discussed, however, did not include selecting a method of dispute resolution. Included in the Agreement that Mr. Lawrence sent to LLI was the following “either/or” provision, which is the subject to this appeal:
IX. GENERAL PROVISIONS
******
SELECT ONE “B” BELOW
B. Dispute Resolution and Governing Law. If at any time during the course of this Agreement or following the termination of the Agreement, there shall arise a dispute arising out of or under this Agreement or with respect to the Agreement, any part thereof, its terms, its interpretation, a breach thereof, or any aspect of the parties relationship and the transactions contemplated herein, the parties agree first to attempt in good faith to settle the dispute by mediation in accordance with the procedures of the Federal Mediation and Conciliation Service [“FMCS”], or by a procedure agreed to by both parties. Once mediation is elected, the parties agree to allow minimum of (60) days to resolve the dispute with mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. If mediation fails, either party may elect to submit to alternative dispute resolution through arbitration. Such arbitration shall be in accordance with the Commercial Arbitration Rules of the American Arbitration Association, pursuant to the Federal Arbitration Act. No civil action concerning any dispute within the scope of this arbitration provision, which the parties intend to be broad in scope, shall be instituted before any court but shall be submitted to final and binding arbitration as herein provided. Such arbitration shall be conducted in accordance with the rules of such association before a single arbitrator. All arbitration proceedings shall take place at a location mutually agreed by the parties, otherwise in Jefferson Parish, Louisiana. All costs of arbitration, including attorneys’ fees and other costs attendant thereto, shall be allocated among the parties according to the arbitrator’s discretion who may award all costs to one party or allocate the costs between the parties. Further, arbitrator’s award resulting from such arbitration may be confirmed and entered as a final judgment in any court of competent jurisdiction and enforced accordingly. The parties expressly agree that proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to bringing or maintaining Rany action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action to maintain the status quo, subject to each party’s right of adequate protection during the pendency of any arbitration proceeding. This Agreement shall not be effective until accepted and executed by ASO [DAS] in Metairie, Jefferson Parish, Louisiana; and shall be governed by and construed in accordance with the laws of the State of Louisiana.
B. Governing Law. This Agreement shall not be effective until accepted and *909 executed by ASO [DAS] in Metairie, Jefferson Parish, Louisiana; and shall be governed by and construed in accordance with the laws of the State of Louisiana.
An authorized representative of both DAS (Mr. Lawrence) and LLI (Christy Dirks, LLI’s owner) signed the Agreement. Neither party’s representative, however, selected either of the options—the “B” provisions—in the “either/or” provision.[2] The Agreement thus became effective with both “B” provisions in it.
Subsequently, a contractual dispute arose between the parties;[3] and the contractual relationship between them was terminated. In his correspondence to Mr. Dirks, dated January 3, 2013, regarding the termination, Mr. Lawrence stated:
We are in receipt of the letter written by Mr. Englehart dated December 28th, 2012 requesting the cancellation of our services for your company....
⅝ ⅝ # ⅜ #
Naturally if we have to depend on attorneys to collect any of monies outstanding we will refer to section IX (b) [of the Agreement] whereby attorneys fees will be added on top of anything else due from your company.[4]
| ¿Meanwhile, in an attempt to resolve their contractual dispute, LLI attempted to invoke the “Dispute Resolution and Governing Law” provision of the Agreement, which imposed as a condition precedent to arbitration that the parties submit to mediation either by the Federal Mediation and Conciliation Service (“FMCS”) or “by a procedure agreed to by both parties.” In late 2012, LLI, with DAS’s knowledge and without any objection from DAS, attempted to have FMCS mediate the dispute. The parties then engaged in two unsuccessful mediations, one in December 2012 and the other on February 5, 2014. DAS participated in both media-tions without objection.
On April 11, 2014, over sixty days after the second mediation, LLI filed an arbitration demand with the American Arbitration Association (the “AAA”). To do so, LLI had to pay $6,200.00 to the AAA. In response, DAS objected contending it never agreed to arbitrate disputes between itself and LLI. On May 11, 2014, the AAA notified the parties that it had made an administrative determination that the matter met its filing requirements. The AAA also notified the parties that absent an agreement by the parties or a court order staying the matter, it would proceed with the administration of the arbitration.
On May 23, 2014, DAS filed a “Petition for Declaratory Judgment, Preliminary and Permanent Injunction” in Orleans Parish against LLI.[5] In its | ^petition, *910 DAS averred that the Agreement contained separate, conflicting provisions regarding dispute resolution—private arbitration or judicial resolution in Jefferson Parish. DAS further averred that the Agreement, as drafted, contemplated that the parties would elect one of the two provisions. The executed Agreement, DAS averred, contained no evidence of an election or agreement to arbitrate disputes. DAS averred that it was not challenging the validity of the Agreement; rather, it was challenging whether there ever was an agreement to arbitrate disputes arising under it “because neither party manifested any intent to make the arbitration provision the chosen method for dispute resolution.” Moreover, DAS averred that the AAA erroneously determined that an arbitrator must decide whether the parties entered into an agreement to arbitrate and that the AAA had begun the processing of the matter for arbitration.
In June 2014, the parties entered into a consent judgment staying the arbitration until such time as the court ruled on DAS’s request for a permanent injunction and declaratory judgment. DAS thus withdrew its request for a preliminary injunction, and the parties engaged in discovery.
On October 31, 2014, the trial court, following a hearing, rendered judgment denying DAS’s request for a declaratory judgment and permanent injunction. In its reasons for judgment, the trial court found that DAS consented to arbitrate by signature and performance. The instant appeal followed.
JURISDICTION AND STANDARD OF REVEW
inA judgment denying a permanent injunction is an appealable judgment. La. C.C.P. art. 3612(B). A judgment denying a declaratory judgment is an interlocutory judgment. Walker v. State, 09-0973, p. 2 (La.App. 4 Cir. 10/21/09), 26 So.3d 782, 784 (holding that a “judgment denying a declaratory judgment is neither a final judgment nor a partial final judgment.”). Nonetheless, “[a]n appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to the review of the final judgment when an unrestricted appeal is taken.” Orleans Parish Sch. Bd. v. Lexington Ins. Co., 11-1720, p. 10 (La.App. 4 Cir. 8/22/12), 99 So.3d 723, 729 (citing Alexander v. Palazzo, 08-1541, p. 6 (La.App. 1 Cir. 2/13/09), 5 So.3d 950, 953); see also Judson v. Davis, 11-0623, pp. 18-19 (La. App. 1 Cir. 11/9/11), 81 So.3d 712, 724. Such is the case here. DAS seeks review of the trial court’s final judgment denying its request for injunctive relief. In the same judgment, the trial court denied its request for a declaratory judgment and dismissed its entire suit. The entire judgment is thus properly before us on appeal.
Appellate courts review judgments denying a permanent injunction under an abuse of discretion standard of review. A.M.E. Disaster Recovery Servs., Inc. v. City of New Orleans, 10-1755, p. 4 (La.App. 4 Cir. 8/24/11), 72 So.3d 454, 456-57. The same standard of review applies to judgments denying declaratory relief, Edgar Benjamin Fontaine Testamentary Trust v. Jackson Brewery Marketplace, 02-2337, pp. 4-5 (La.App. 4 Cir. 5/7/03), 847 So.2d 674, 677 (quoting In re Peter, 98-0701, pp. 4-5 (La.App. 4 Cir 12/23/98), 735 So.2d 665, 667) (holding that |7“ ‘the scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment.’ ”); see also Louisiana Supreme Court Committee on Bar Admissions v. Roberts, 00-2517, p. 3 (La.2/21/01), 779 So.2d 726, 728) (holding that “[t]rial courts *911 are vested with wide discretion in deciding whether to grant or refuse declaratory relief.”).
ARBITRATION
In Louisiana, the positive law favors arbitration as “a preferred method of alternative dispute resolution.” Hodges v. Reasonover, 12-0043, p. 4 (La.7/2/12), 103 So.3d 1069, 1072 (citing Aguillard v. Auction Management Corp., 04-2804, p. 6 (La.6/29/05), 908 So.2d 1, 7). Under Louisiana law, a written contract to settle a dispute by arbitration is binding and enforceable. La. R.S. 9:4201.[6] Pursuant to La. R.S. 9:4202,[7] “a court shall stay the trial of an action in order for arbitration to proceed if any party applies for such a stay and shows (1) that there is a written arbitration agreement and (2) the issue is referable to arbitration under | sthat arbitration agreement, as long as the applicant is not in default in proceeding with the arbitration.” International River Ctr. v. Johns-Manville Sales Corp., 02-3060, p. 3 (La.12/3/03), 861 So.2d 139, 141; see also Matthews-McCracken Rutland Corp. v. City of Plaquemine, 414 So.2d 756, 757 (La.1982) (holding that “[o]nce the court finds an agreement to arbitrate and a failure to comply therewith, the court shall order arbitration”),
The proper procedure for a party to raise the failure to submit to arbitration is either a dilatory exception of prematurity or a motion to stay. Frank L. Maraist and Harry T. Lemmon, 1 LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.6, n. 28 (1999). In this case, DAS properly raised the issue of whether there was an agreement between the parties to arbitrate by filing a request for injunctive relief to stay the arbitration LLI commenced.
In addressing a motion to stay, the threshold inquiry a court must decide is whether the parties agreed to arbitrate their dispute, which is a two-fold inquiry: (1) whether there is a valid arbitration agreement, and (2) whether the dispute in question falls within the scope of that agreement. Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., OS-1662, p. 9 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 388.
“[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); see also Aguillard, 04-2804 at p. 18, 908 So.2d at 25. “Notwithstanding the strong presumption in favor of arbitration, the arbitration clause *912 which is sought to be enforced must have |9a “reasonably clear and ascertainable meaning” in order to enforce arbitration. J. Caldarera & Co, v. Louisiana Stadium & Exposition Dist„ 98-294, p. 4 (La.App. 5 Cir. 12/16/98), 725 So.2d 549, 561 (quoting Kosmala v. Paul, 569 So.2d 158, 162 (La, App. 1st Cir.1990)). The question of whether there is an agreement to arbitrate is generally one for the court to decide based on state law contract principles. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); Saavedra v. Dealmaker Developments, LLC, 081239, pp. 6-7 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 762-63. Under the Louisiana Civil Code, the interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045; Ganier v. Inglewood Homes, Inc., 06-0642, p. 3 (La.App. 4 Cir. 11/8/06), 944 So,2d 753, 756.
This court in the Lakeland case summarized the principles that apply in resolving the issue of whether a contract to arbitrate exists as follows:
• Because arbitration is a “creature or matter of contract,” a court cannot compel a party to submit to arbitration any disputes that the party has not agreed to submit, Larry E. Edmondson, DOMKE ON COMMERCIAL ARBITRATION § 1:2 (3rd ed. 2003) (“DOMKE”).
• A corollary of the fact that arbitration agreements are contracts is that such agreements must be interpreted by applying accepted rules of state contract law. DOMKE § 1:2.
• Louisiana courts have applied the Civil Code articles regulating the interpretation of contracts found in La. C.C. arts. 2045 to 2057 in interpreting arbitration agreements. Metro Riverboat Associates, Inc. v. Bally’s Louisiana, Inc., 97-1672, p. 7 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, 558.
• Logically, since an arbitration agreement is a contract, an appellate court reviewing a trial court’s decision on a motion to compel arbitration applies the same standard of review as it would apply in reviewing a trial court’s decision interpreting a contract.[8]
Im* Stated otherwise, an appellate court’s review of a district court’s decision finding the parties agreed to submit their dispute to arbitration “should proceed like review of any other district court decision finding an agreement between the parties, e.g., accepting findings of fact that are not ‘clearly erroneous’ but deciding questions of law de novo.’ ” Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 532 (5th Cir.2000)(Dennis, J., dissentingXquoting First Options of Chicago, Inc. v. Kap-lan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).[9]
*913 With those principles in mind, we turn to DAS’s assignment of error.
DISCUSSION
On appeal, DAS’s sole assignment of error is that the tidal court committed legal error by finding a valid arbitration agreement when there was no mutual consent between the parties to arbitration. The fact that the trial court found the parties’ conduct demonstrated consent, DAS contends, is manifestly erroneous.
The subject of this appeal, as noted earlier, is the “either/or” provision contained in the Agreement. DAS contends that because neither party selected the arbitration alternative (the “Dispute Resolution and Governing Law” provision), there is no agreement to arbitrate. As a result, DAS contends that the default | n method of dispute resolution—litigation—applies.[10] DAS further contends that, contrary to LLI’s suggestion, the Agreement, by its terms, provided instructions to LLI that it needed to make a choice between the dispute resolution provisions in “B” before signing it. Specifically, DAS cites the heading to that provision, which reads: “SELECT ONE ‘B’ BELOW.” DAS also cites the principle that parties are presumed to know the content of a written contract they sign.
LLI counters that the instruction in the Agreement that DAS cites was intended by the unknown attorney who provided DAS with the form contract to apply to DAS, not to DAS’s clients.[11] Continuing, LLI contends that the intent of that instruction was for DAS to delete one of the “Bs” from the form contract when it customized it for the particular client. In support, LLI cites the absence of any box or signature line on the page on which the dispute resolution provisions are located for selecting one of the “Bs.” LLI further contends that the Agreement makes arbitration available once DAS signs it. LLI emphasizes that there was only one place in the Agreement for DAS to sign and that by signing the Agreement, which it provided, DAS consented to arbitrate.
hiAgreeing with LLI, the trial court, in its written reasons for judgment, found that there was consent by signing. The trial court reasoned as follows: “[DAS] prepared the contract and signed it, and in doing so consented to arbitrate.” We disagree. To the extent the trial court relied on the fact DAS prepared the Agreement, we note, as DAS emphasizes, the Agreement expressly negates the general principle that ambiguous provisions are construed against the drafter. The Agreement provides as follows:
Each party has reviewed this Agreement, had the opportunity to have counsel review the Agreement, and, aecord- *914 ingly, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement. Section IX (H).
Moreover, the Agreement, which both parties signed, includes the two “Bs”, which are arguably conflicting dispute resolution provisions. Only one of those provisions authorizes arbitration. We thus cannot conclude that by signing the Agreement DAS unambiguously agreed to arbitrate. Instead, we conclude that the inclusion of both provisions renders the Agreement ambiguous.
In resolving the ambiguity presented by the Agreement, we find the analysis employed in J. Caldarera & Co. v. Louisiana Stadium and Exposition Dist., 98-294 (La.App. 5 Cir. 12/16/98), 725 So.2d 549, instructive. In that case, the issue was whether a construction contract included an agreement to arbitrate. In negotiating the contract, the parties struck the entire section entitled “ARBITRATION,” but failed to strike arbitration language in the preceding section entitled “RESOLUTION OF CLAIMS AND DISPUTES.” The language |iathat was retained provided that the architect’s decision will be made within seven days, “which decision shall be final and binding on the parties but subject to arbitration.”
The trial court in Caldarera found the contract included an agreement to arbitrate. Affirming, the appellate court concluded that deleting the arbitration section without striking or otherwise amending the resolution of claims and disputes section “raise[d] a question as to whether the parties intended the controversy to be ar-bitrable.” Caldarera, 98-294 at p. 6, 725 So.2d at 552. Continuing, the appellate court reasoned as follows:
In the hearing held on the issue, the only evidence presented was the contract, the supplemental contract and the general conditions of the contract. No testimony or other parole evidence was introduced to indicate the intent of the parties. In light of the Louisiana Civil Code requirements for the interpretation of contracts, the legislative policy favoring arbitration, the failure of defendant to prove that the parties’ intent was to delete arbitration and the presence of arbitration in paragraph 4.4.4, we find that the trial judge did not err in ordering arbitration.
Id. The appellate court in Caldarera thus identified the three relevant factors to be considered in resolving the ambiguity created by an agreement containing conflicting provisions regarding arbitration; the three factors are as follows: (1) extrinsic evidence of intent, (2) contract interpretation principles, and (3) the presumption favoring arbitration. See 7 Bruner & O’Connor CONSTRUCTION LAW § 21:87 (discussing Caldarera, supra, and noting these factors).
As in the Caldarera case, we find the inclusion of both “B” provisions—the “Dispute Resolution and Governing Law” and “Governing Law” provision—in the Agreement created an ambiguity regarding whether the parties intended to agree to [ ^arbitrate. Unlike in Caldarera, the parties in this case presented the trial court with extrinsic evidence of intent.[12] Based on the extrinsic evidence and the Civil Code article on consent by performance,[13] *915 the trial court found the parties consented by performance to arbitration. In so finding, the trial court reasoned as follows:
Further, the parties consented by performance. Louisiana Civil Code article 1927 authorizes acceptance by performance. Mr. Lawrence testified that he could have selected one of the B’s, but also testified that he intended to give either party the option to select and use the “Dispute Resolution and Governing Law” provisions. In fact, both parties agreed to voluntarily engage in two me-diations, which ultimately were unsuccessful. Further, in January 2013, Delta threatened Louisiana Livery by referring it to the attorney fee provisions contained under the “Dispute Resolution and Governing Law” section. Finally, Mr. Lawrence testified that he does not oppose participating in arbitration; it is his counsel who does. Accordingly, in light of these facts, both parties accepted the arbitration and attorney fee provisions contained in the contract by performance.
As noted, DAS contends the trial court’s finding of consent by performance is manifestly erroneous. Quoting the language of La. C.C. art. 1927, DAS contends that the evidence of consent must be “clearly indicative of consent” and that the evidence relied upon by the trial court to find consent by performance is not clearly indicative of its consent to arbitrate. In support, DAS asserts the following contentions:
• Mediation is irrelevant. Mediation is often chosen even if there is no express mediation clause in an agreement. The fact the parties attempted mediation before is of no moment. The parties chose to mediate; neither was compelled to do so. By doing so, they did not manifest their intent to |^arbitrate. Moreover, evidence of mediation is analogous to evidence of settlement discussion, which generally is inadmissible. La. C.E. art. 408.[14]
• Mr. Lawrence’s January 3, 2013 letter should be considered as part of “privileged settlement discussion” and not part of the record. DAS contends that it is “nothing more than a statement by a non-attorney in settlement discussions.”
• Mr. Lawrence’s deposition testimony that it was his attorney, not him, that opposed arbitration was misunderstood and mischaracterized by the trial court. His testimony is not evidence of consent to arbitrate.
• The trial court inappropriately focused upon the parties’ conduct after a dispute arose rather than their conduct manifesting their intent or meeting of the minds about the formation of an agreement. The proper focus regard *916 ing the agreement of the parties is at the time the agreement is made, not when a dispute arises.
As LLI points out, DAS never objected—based on La. C.E. art. 408 or any other ground—in the trial court to the evidence of its participation in the media-tions and Mr. Lawrence’s January 3, 2013 letter. As a result, LLI contends that this court should not consider these arguments made for the first time on appeal. See Scott v. Zaherí, 14-0726, p. 14 (La.App. 4 Or. 12/3/14), 157 So.3d 779, 788 (citing Rule 1-3, Uniform Rules—Courts of Appeal and noting that “[generally, issues not raised in the trial court will not be given consideration for the first time on appeal,”). Regardless, LLI contends that La. C.E. art. 408 would |1finot bar consideration of either DAS’s participation in mediation or Mr. Lawrence’s letter for purposes of establishing that DAS’s conduct was consistent with its acceptance by performance. We agree. Indeed, La. C.E. art. 408 expressly states that it “does not require exclusion when the evidence is offered for another purpose” than to prove liability for or invalidity of the claim or its amount.
As to Mr. Lawrence’s deposition testimony, the record reflects that Mr. Lawrence was asked why he did not want to participate in arbitration; he replied as follows: “Who said I didn’t want to participate [in an arbitration]?”[15] Mr. Lawrence further testified that he was objecting to the arbitration because “[i]t’s my attorney’s advice then.” It cannot be concluded that the trial court was manifestly erroneous in finding that “Mr. Lawrence testified that he does not oppose participating in arbitration; it is his counsel who does.”
Finally, DAS’s contention that the trial court erred in focusing on the parties’ post-contract actions is unpersuasive. Performance, as LLI points out, follows the signing of a contract. The trial court thus could not determine whether there was consent by performance without considering the parties’ post-contract actions. Indeed, La. C.C. art.2053 provides that “a doubtful provision must be interpreted in light of ... the conduct of the parties before and after the formation of the contract.”
In sum, we find, contrary to DAS’s contention, that the trial court’s finding of consent by performance was not manifestly erroneous. Based on the extrinsic 117evidence presented, the pertinent Civil Code articles, and the policy favoring arbitration, we find no error in the trial court’s finding that the parties consented by performance to arbitrate disputes arising out of the Agreement.[16]

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. The only date on the Agreement is “12/16/2009,” which appears in a footer on each page of the document. The parties indicate that the Agreement became effective in January 2010.

. The page of the Agreement on which the "B” provisions appeared contained nowhere for the parties to initial, sign, or check a box to accept or reject the arbitration option,

. As LLI points out in its brief, the underlying dispute is that LLI alleges DAS breached the Agreement and that the breach caused the damages that LLI had to pay to settle litigation with third parties. DAS denies that it breached the Agreement or that any breach caused damages. The merits of the underlying dispute between the parties are not before us.

. We note that the Agreement includes another provision regarding attorney’s fees, Section IX (C), which provides:
In the event that any action or arbitration is brought by either party hereto as a result of a breach or default in any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorney’s fees and costs incurred by such party in such action in addition to any other relief to which the party may be entitled.

. The American Arbitration Association (the “AAA”) also was named as a defendant; however, DAS voluntarily dismissed the AAA.

. The Louisiana Arbitration Law is set forth in La. R.S. 9:4201 through 4217. La. R.S. 9:4201 provides:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

. La. R.S. 9:4202 provides:
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

. The determination as to whether to stay or compel arbitration is a question of law. Billlieson v. City of New Orleans, 02-1993, p. 3 (La.App, 4 Cir. 9/17/03), 863 So.2d 557, 560 (citing Hennecke v. Campa, 96-0772 (La.App. 4 Cir. 5/21/97), 700 So.2d 521); Williams v. Keller Williams Realty, 14-0202, pp. 2-3 (La. App. 4 Cir. 11/5/14), 154 So.3d 605, 607.

. We recently enunciated the standard of review applicable to construction of contracts in LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., 02-0663, pp. 3-4 (La.App, 4 Cir. 11/20/02), 833 So.2d 1010, 1012, stating:
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Lake-land Anesthesia, Inc. v. Cigna Healthcare of Louisiana, Inc., 2001-1059, p. 3 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 697, quoting Bartlett Const. Co., Inc. v. St. Bernard Parish Council, 99-1186 (La.App. 4 Cir. 5/31/00), 763 So.2d 94, writ denied 2000-2322 (La. 11/03/00), 773 So.2d 142. The trial court’s interpretation of a contract is sub *913 ject to the manifest error rule. Id. The manifest error rule provides that an appeals court may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Id.

. "The default rule for resolution of disputes that the parties cannot resolve themselves is generally adjudication by a court.” Maurits Barendrecht and Berend R. de Vries, Fitting the Forum to the Fuss with Sticky Defaults: Failure in the Market for Dispute Resolution Services?, 7 Cardozo J. Conflict Resol. 83; 85 (2005). It is well settled, however, that the parties, by contract, may select another form of dispute resolution, such as arbitration. Id. The issue in this case is thus whether the parties did so.

. In its discovery responses, DAS stated that an unknown attorney, who provides services to clients who are ASO organizations, provided the form contract to DAS. In his deposition, Mr. Lawrence testified that he scanned the form contract into his computer. He further testified that he did not have DAS’s regular attorney review the Agreement.

. The extrinsic evidence presented included Mr. Lawrence’s and Mr. Dirks’ affidavits, Mr. Lawrence’s deposition testimony, and DAS's discovery responses.

. La. C.C. art.1927 provides that consent can be "orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.” See also La. C.C. art.2053 (providing that “a doubtful pro *915 vision must be interpreted in light of the nature of the contract, equity, usages, and the conduct of the parties before and after the formation of the contract.’1)

. La. C.E. art. 408 provides:
In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This Article does not require the exclusion of any evidence otherwise admissible merely because it is presented in the course of compromise negotiations. This Article also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

. Mr. Lawrence also testified that it was not error to include both of the "B” provisions in the Agreement.

. Given our holding that the trial court did not err in finding consent by performance, we pretermit addressing LLI's other arguments regarding contractual interpretation, detrimental reliance, and estoppel.