ELIZABETH W. MAGNER     *     NO. 2023-CA-0598
AND MICHAEL W. MAGNER

                    *

VERSUS                      COURT OF APPEAL

                    *

MICHAEL DEAS               FOURTH CIRCUIT

                    *

                     STATE OF LOUISIANA

           * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-05431, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

**LOBRANO, J., CONCURS IN THE RESULTS AND ASSIGNS REASONS.**

P. J. Kee
Michael William Magner
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100

Elizabeth Wall Magner
916 Governor Nicholls Street
New Orleans, LA 70116

       COUNSEL FOR PLAINTIFF/APPELLANT

Gilbert R. Buras, Jr.
ATTORNEY AT LAW
710 Carondelet Street
New Orleans, LA 70130

       COUNSEL FOR DEFENDANT/APPELLEE

                              **AFFIRMED IN PART;
REVERSED IN PART;
REMANDED FOR
FURTHER PROCEEDINGS
MARCH 27, 2024**

Appellants/Plaintiffs, Elizabeth and Michael Magner (hereinafter collectively "the Magners"), seek review of the trial court's October 25, 2022 judgment denying their petition for a declaratory judgment and permanent injunction in favor of Appellee/Defendant Michael Deas (hereinafter "Mr. Deas"). After consideration of the record before this Court and the applicable law, we affirm the trial court's judgment in part, reverse in part and remand the matter for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

This appeal arises from a property dispute between neighboring French Quarter landowners. The Magners own the residence located at 916 Governor Nicholls Street and Mr. Deas owns the residence next door at 914 Governor Nicholls Street (hereinafter referred to as "the Magner Residence" and "the Deas Residence," respectively).[1] The Deas Residence contains two alleys: one alley is located on the south side on Burgundy Street while the second alley is situated on

---

[1] The residences are located in the French Quarter and are subject to the rules of the Vieux Carré Commission, the local entity that controls maintenance and repairs of properties within the French Quarter.

1

the north side between the two residences. Mr. Deas owns the alley situated between the two residences which is approximately four and one-half feet wide and is inaccessible to the Magners. The Magner Residence has no side setbacks, abuts one side of the Deas Residence, and takes up the entire lot it rests upon.

In 2021, as a result of Hurricane Ida, the Magner Residence suffered significant water and roof damage. After consulting with roofers and masonry experts regarding the source of the water intrusion and damage, the Magners concluded their north exterior wall required extensive repairs.[2] In order to repair the damaged area, and due the configuration of the residences, the Magners will need access to the north alley which is on Mr. Deas' property.[3] The repairs will require the workers construct a two-story scaffold in the north alley and the scaffold would remain in the alley for a period, not to exceed, twenty-one days. After months of negotiations, Mr. Deas refused the Magners' request for access to the alley.

On June 21, 2022, the Magners filed a "Verified Petition for Declaratory Relief, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction" (hereinafter "the Petition"). The Petition requested the following relief:

(1) A declaratory judgment recognizing a servitude in favor of the Magner Residence (as defined below) over the Deas Property (as defined below) both now and in the future upon the satisfaction of certain enumerated conditions, for the purpose of performing maintenance or repairs to the Magner Residence;

(2) The immediate issuance of a temporary restraining order compelling Deas to recognize the servitude and allow access to the Deas Property and cease interfering with the execution of repairs; and

---

[2] Mr. Deas previously granted the Magners access to the alley for renovations to the Magner Residence in 2015.

[3] The Magners proposal to Mr. Deas was that construction occur on the weekdays from 8:00 a.m. to 5:00 p.m. and on weekends from 9:00 a.m. to 4:00 p.m.

(3) The entry of preliminary and permanent injunctions maintaining the same relief requested through the temporary restraining order.

The Petition's prayer for relief requests the trial court grant "all other legal and equitable relief as is just and proper." The trial court granted the motion for a temporary restraining order (hereinafter "TRO") and set a contradictory hearing for the preliminary injunction. Mr. Deas sought to dissolve the TRO and requested a continuance of the preliminary injunction hearing. The trial court set a hearing for Mr. Deas' motions and the Magners' request for preliminary injunction on the same day. Both Mr. Deas' motions and the Magners' request for a preliminary injunction were denied. In response, Mr. Deas filed a peremptory exception of no cause of action or in the alternative a motion for a judgment on the pleadings. The Magners opposed the exception, alleging the Petition states a cause of action for a claim of "equitable relief" under La. C.C. art. 4 and an abuse of rights claim against Mr. Deas. The trial court denied the exception and set a trial date for the Magners' petition for declaratory relief and a permanent injunction.

At trial, Mrs. Magner testified as to her discussions with Mr. Deas regarding access to the alley. Two of the masonry workers hired by the Magners confirmed the need to repair the exterior wall to stop the water intrusion into the Magner Residence. Mr. Deas testified that his refusal to allow the Magners access was based on his prior experience, discussions with the Magners and inconveniences suffered when he granted the Magners access to the alley in 2015. Mr. Deas explained that he is an artist who uses his home as a studio and believes the disruption of the repairs would impede his ability to work. Both parties submitted evidence which included the following: (1) photographs of the alley; (2) the acts of

3

sale for both the Magner Residence and the Deas Residence; (3) photos of construction to the Magner Residence in 2015; (4) text messages and emails between the Magners and Mr. Deas; (5) a copy of the liability insurance purchased by the Magners for the 2021 repairs; and (6) a copy of the indemnity agreement provided by the Magners to Mr. Deas.

After taking the matter under advisement, the trial court issued a judgment and reasons for judgment denying the Magners' petition for declaratory judgment and request for a permanent injunction. The trial court concluded that it had no authority to create a servitude in favor of the Magner Residence granting the Magners access to the alley for maintenance and repairs. The Magners' abuse of rights claim was also denied. Thereafter, the Magners filed a motion for new trial maintaining the trial court failed to rule on their La. C.C. art. 4 claim. The motion for new trial was denied. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

"A judgment denying a declaratory judgment is an interlocutory judgment." *Delta Admin. Servs., L.L.C. v. Limousine Livery, Ltd.,* 2015-0110, p. 6 (La.App. 4 Cir. 6/17/15), 216 So.3d 906, 910 (citation omitted). In accordance with La. C.C.P art. 3612(B), a judgment denying a permanent injunction is a final appealable judgment. "An appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to the review of the final judgment when an unrestricted appeal is taken." *Orleans Par. Sch. Bd. v. Lexington Ins. Co.,* 2011-1720, p. 10 (La.App. 4 Cir. 8/22/12), 99 So.3d 723, 729 (citation omitted). The Magners seek review of the trial court's judgment denying their request for

4

injunctive relief and request for a declaratory judgment. Accordingly, we find the judgment is properly before this Court on appeal.

This Court reviews a trial court's denial of a permanent injunction and judgments denying declaratory relief under the abuse of discretion standard. *Delta Admin. Servs., L.L.C.*, 2015-0110, p. 6, 216 So.3d at 910. Further, "[j]udgments regarding servitudes are reviewed under the manifest error standard of review." *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 2015-0301, p. 4 (La.App. 4 Cir. 12/23/15), 183 So.3d 724, 727 (citation omitted). "To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous." *Id.* (citations omitted).

## DISCUSSION

The Magners assert one assignment of error on appeal and argue the trial court failed to grant "equitable relief" under La. C.C. art. 4. From this general allegation, we find there are three issues before this Court which can be categorized as: (1) Injunctive and Declaratory Relief; (2) Abuse of Rights; and (3) New Trial on La. C.C. art. 4 – Equitable Relief. We address each in turn.

### *Injunctive and Declaratory Relief*

The Magners assert the trial court erred in failing to render injunctive and declaratory relief by granting them a predial servitude. "The purpose of a declaratory judgment is to provide a method whereby parties may request a trial judge to 'declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" *Couvillon v. James Pest Control, Inc.*, 1998-2382, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 172, 174 (quoting La. C.C.P. art. 1871).

5

"[T]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." La. C.C.P. art. 1871. "Use of the word 'may' rather than 'shall' evidences the legislature's intent to afford the trial court substantial discretion in deciding whether or not to render declaratory judgment." *Olano v. Karno,* 2020-0396, p. 4 (La.App. 4 Cir. 4/7/21), 315 So.3d 952, 956 (quoting *In re Interment of LoCicero*, 2005-1051, p. 4 (La.App. 4 Cir. 5/31/06), 933 So.2d 883, 886). Prior to our analysis of the trial court's ruling denying the Magners' request for injunctive and declaratory relief, a brief overview of the principles of Louisiana property law is warranted.

"Property law in Louisiana is a distinct branch of the civil law, dealing with the principal real rights that a person may have in things." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, p. 9 (La. 10/25/11), 79 So.3d 246, 257 (citations omitted). Our Civil Code "classifies 'things' into different categories to which different rules may apply." *Id.*, 2010-2267, pp. 9-10, 79 So.3d at 257 (citation omitted). "The first division of things in [our] Civil Code is into common, public and private things." *Id.*, 2010-2267, p. 10, 79 So.3d at 257 (citations omitted). A person may have various rights in things such as: ownership; personal and predial servitudes; and such other real rights as the law allows. La. C.C. art. 476; *Id.*, 2010-2267, p. 10, 79 So.3d at 258 (citations omitted). "Real rights are not defined by the Civil Code, but ownership is." *Id.*, 2010-2267, p. 10, 79 So.3d at 258. "Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing." La. C.C. art. 477. An owner may use, enjoy, and dispose of a thing within the limits and conditions established by law. *Id.*

Our Supreme Court has determined that "a real right can be understood as ownership and its dismemberments." *Eagle Pipe & Supply, Inc.*, 2010-2267, p. 11,

6

79 So.3d at 258. (citations omitted) "The various dismemberments of ownership also confer real rights on the owner or holder of that right." *Id*. Servitudes are examples of various dismemberments of ownership in our Civil Code that are divided into personal and predial. Personal and predial servitudes confer real rights on the holder of the servitude. *Id*. A real right cannot exist without a determined object. *Id.*, 2010-2267, p. 12, 79 So.3d at 259. (citations omitted).

Louisiana Civil Code article 646 defines a predial servitude as "a charge on a servient estate for the benefit of a dominant estate." The two estates must belong to different owners." La. C.C. art. 646. An estate burdened with a predial servitude is designated as the servient estate and the estate in whose favor the servitude is established is designated as the dominant estate. *See 1026 Conti Condominiums, LLC v. 1025 Bienville, LLC,* 2019-0826, p. 6 (La.App. 4 Cir. 8/5/20), 364 So.3d 297, 301 (citation omitted). An owner of an estate may establish a predial servitude on his estate or acquire it for the estate's benefit. *Id*., 2019-0826, p. 6, 364 So.3d at 302. "The use and extent of such servitudes are regulated by the title by which they are created… ." La. C.C. art. 697. In the absence of a title, servitudes are governed by the rules set forth in La. C.C. arts. 698 through 774. *See* La. C.C. art. 697; *see also 1026 Conti Condominiums, LLC*, 2019-0826, p. 6, 364 So.3d at 302. "Predial servitudes may be natural, legal, and voluntary or conventional." La. C.C. art. 654. "Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or conventional servitudes are established by juridical act, prescription, or destination of the owner." *Id*.

The Magners request the trial court create a predial servitude in favor of their residence, allowing them to perform maintenance and repairs on their property. According to the Magners, a court can judicially create a predial

7

servitude granting them access to perform maintenance and repairs to their property. However, based on the facts and posture of this case, the remedy sought by the Magners is not allowed under existing jurisprudence or our Civil Code. There is no evidence in the record indicating a servitude, by juridical act, prescription, or destination of the owner, exists between the two residences. *See* La. C.C. art. 654. Moreover, there is no evidence within the record to show the Magners' property encroaches on Mr. Deas' property. *See Winingder v. Balmer*, 1993-0874, (La.App. 4 Cir. 2/11/1994), 632 So.2d 408. Without these conditions, a trial court may not judicially create a servitude. Rather, our Civil Code confines the court to the task of assessing whether a servitude exists and allows it to define the scope of the servitude. *See generally Palomeque v. Prudhomme*, 1995-0725 (La. 11/27/95), 664 So.2d 88; *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 2019-0826 (La.App. 4 Cir. 8/5/20), 364 So.3d 297; *Nola Bourbon, LLC v. Rodriguez-Franco*, 2021-0023 (La.App. 4 Cir. 6/23/21), 324 So.3d 709. Thus, because there was no servitude for the trial court to assess or define, we find the trial court did not err in denying the request for a declaratory judgment. However, as will be discussed below, we recognize that the Magners are entitled to relief.

***Abuse of Rights***

The Magners maintain that the trial court erred in denying their abuse of rights claim as Mr. Deas abused his rights in declining access to the alley. The abuse of rights doctrine is rarely invoked in Louisiana. *Insulation Techs., Inc. v. Indus. Labor & Equip. Servs., Inc.*, 2013-0194, p. 7 (La.App. 4 Cir. 8/14/13), 122 So.3d 1146, 1151 (citation omitted). This doctrine "applies only in limited circumstances because its application renders unenforceable one's otherwise

8

judicially protected rights." *Id.* (citation omitted). "The [abuse of rights doctrine] is essentially that 'fault' in the delictual sense can be imposed upon a party who attempts to exercise a legal right with the primary intention of harming or imposing a detriment upon another." *Id.*, 2013-0194, pp. 7-8, 122 So.3d at 1151 (citation omitted). For the abuse of rights doctrine to apply, one of the following conditions must exist:

> (1) the predominant motive for exercise of the right is to cause harm;
>
> (2) there is no serious or legitimate motive for exercise of the right;
>
> (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or
>
> (4) the exercise of the right is for a purpose other than that for which it was granted.

*Lee v. Pennington*, 2002-0381, p. 8 (La.App. 4 Cir. 10/16/02), 830 So.2d 1037, 1043 (citation omitted). According to the Magners, Mr. Deas' failure to grant access to the alley causes them continuous harm by not allowing them to repair their residence. The trial court found the Magners' argument regarding abuse of rights unpersuasive. We agree.

The Magners failed to establish any of the four conditions necessary to apply the abuse of rights doctrine. Testimony reveals the repairs to the Magner Residence are only possible if workers are granted access to the alley. Granting access to the alley would require Mr. Deas to be present in his home from the hours of 9:00 a.m. through 5:00 p.m. daily. Mr. Deas is an artist who is self-employed and works out of his home. He testified at trial the repairs would cause a disruption to his day-to-day routine and interrupt his work. There is no evidence to indicate Mr. Deas' refusal to allow access to the alley was done for the sole purpose of causing harm to the Magners. Due to the nature and extent of the repairs, we also find Mr. Deas

has a justifiable interest in denying the Mangers access to his alley to prevent interruption to his daily life.

The Magners also failed to present evidence that Mr. Deas was refusing access to his alley in bad faith or as an attempt to violate "moral rules" and "elementary fairness." He acknowledged the seriousness of the damage to the Magner Residence as well as the need for repairs, but noted his unpleasant experience in granting the Magners access to the alley in 2015. He stated he did not want a repeat of this experience. It is uncontroverted the alley belongs to Mr. Deas and that he has a judicially protected right to prevent access to his property. Mr. Deas also commented that the daily compensation rate offered by the Magners for the use of the alley was unacceptable to him. No evidence was submitted at trial to suggest Mr. Deas' refusal to grant access is for any purpose other than given in his testimony. Thus, we find the Magners failed to establish any of the required conditions necessary to apply the abuse of rights doctrine. Accordingly, the trial court did not err in denying the Magners' abuse of rights claim.

### New Trial on La. C.C. art. 4 – Equitable Relief

The Magners contend the trial court erred in denying their motion for new trial because the Petition's prayer for relief raises a claim of "equitable relief" under La. C.C. art. 4. "This Court reviews a ruling on a motion for new trial under an abuse of discretion standard of review." *Sunset Harbour, LLC v. Brown*, 2022-0572, p. 9 (La.App. 4 Cir. 1/9/23), 356 So.3d 1167, 1173 (citation omitted).

The trial court denied the motion for new trial finding the Magners failed to present any peremptory grounds for new trial under La. C.C.P. art. 1972 or

demonstrate good grounds for a new trial under La. C.C.P. 1973.[4] Specifically, the

trial court determined the Mangers did not present evidence of "equitable relief" at

trial and did not raise the claim in the Petition. We disagree.

La. C.C. art. 4 provides, "[w]hen no rule for a particular situation can be

derived from legislation or custom, the court is bound to proceed according to

equity. To decide equitably, resort is made to justice, reason, and prevailing

usages."[5] The sole issue for the Magners is their need to perform necessary and

critical repairs to their home. The present dispute between the Magners and Mr.

Deas is indicative of a situation not covered by legislation or custom. The Magner

Residence has extensive water damage as a result of Hurricane Ida that will only

worsen if the roof is not repaired. The repairs can only be accomplished with

---

[4] La. C.C.P. art. 1972 provides:

> A new trial shall be granted, upon contradictory motion of any party, in the
> following cases:

> (1) When the verdict or judgment appears clearly contrary to the law and the
>     evidence.
> (2) When the party has discovered, since the trial, evidence important to the
>     cause, which he could not, with due diligence, have obtained before or during
>     the trial.
> (3) When the jury was bribed or has behaved improperly so that impartial justice
>     has not been done.

La. C.C.P. art. 1973 provides in pertinent part, "[a] new trial may be granted in any case if there
is good ground therfor… ."

[5] Our Civil Code establishes two sources of law in Louisiana, legislation and custom. La. C.C.
art. 1. "Custom may not abrogate legislation." La. C.C. art. 3. Our Supreme Court has
determined,

> [i]n Louisiana, courts are not bound by the doctrine of *stare decisis,* but there is a
> recognition in this State of the doctrine of *jurisprudence constante.* Unlike *stare
> decisis,* this latter doctrine does not contemplate adherence to a principle of law
> announced and applied on a single occasion in the past.

*Doerr v. Mobil Oil Corp.*, 2000-0947, pp. 13-14 (La. 12/19/00), 774 So.2d 119, 128 (quoting
*Johnson v. St. Paul Mercury Ins. Co.*, 256 La. 289, 296, 236 So.2d 216, 218 (1970)). "Under the
civilian tradition, while a single decision is not binding on our courts, when a series of decisions
form a 'constant stream of uniform and homogenous rulings having the same reasoning,'
*jurisprudence constante* applies and operates with 'considerable persuasive authority.'" *Id.,*
2000-0947, p. 14, 774 So.2d at 128 (quoting James L. Dennis, *Interpretation and Application of
the Civil Code and the Evaluation of Judicial Precedent*, 54 La. L.Rev 1, 15 (1993)).

access to Mr. Deas' alley. The Magners and Mr. Deas have attempted to negotiate a contract for use of the alley; however, they have failed to reach a resolution. The testimony at trial suggests that failure to repair the Magners' roof will cause continued deterioration of the exterior wall. The deterioration could result in the Magners' wall collapsing and causing damage to the Deas Residence. *See* La. C.C. art. 660 (an "owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or a passerby."). Although Mr. Deas is entitled to decline the Magners access to his property, La. C.C. art. 4 permits a trial court to equitably fashion a remedy that includes specific terms of use and compensation. The Petition's prayer for relief and evidence presented at trial, reveals the Magners are entitled to some form of relief which allows them to repair their home. The trial court did not rule on the Magners' request for equitable relief and we find this ruling to be in error. Good grounds exist for the granting of a new trial. *See* La. C.C.P. art. 1973; La. C.C. art. 4; *see also Saloom v. Dep't of Transp. & Dev.*, 2022-00596, p. 6 (La. 12/9/22), 354 So.3d 1179, 1183 (citations omitted). Accordingly, we find the trial court abused its discretion in denying the motion for new trial.

## CONCLUSION

A review of the record reveals a contentious disagreement between neighbors and we recognize the Magners' conundrum and potential threat to the structural integrity of their home. Judicially created servitudes, under the facts of this case, are not provided for in existing law. Therefore, we agree with the trial court that a declaratory judgment is not the proper procedural vehicle in which to mandate the relief sought by the Magners. The only judicial remedy available is

12

injunctive relief. Thus, we find the trial court erred by not granting injunctive relief by tailoring a ruling allowing the Magners a means to repair their home. Since Mr. Deas and the Magners cannot reach an agreement, the trial court must fashion an equitable remedy for both parties under La. C.C. art. 4. The trial court should review and consider, in *pari materia*, the various code articles in Book II of the Louisiana Civil Code in fashioning an equitable remedy. Accordingly, we reverse the trial court's denial of the Magners' motion for a new trial and remand this matter to the trial court for further proceedings.

## **DECREE**

Based on the foregoing with affirm in part and reverse in part the trial court's October 25, 2022 judgment and remand this matter for further proceedings.

**AFFIRMED IN PART;**
**REVERSED IN PART;**
**REMANDED FOR**
**FURTHER PROCEEDINGS**