**Clifford MOREAU, Plaintiff-Appellant,**

v.

**OTIS ELEVATOR COMPANY et al., Defendants-Appellees.**

**No. 75–4415**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 10, 1976.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

Arthur Cobb, Baton Rouge, La., for plaintiff-appellant.

Roger M. Fritchie, Baton Rouge, La., for defendants-appellees.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

Clifford Moreau, plaintiff-appellant, instituted this diversity action against Otis Elevator Company (Otis) for personal injuries sustained when the elevator in which he was riding at the Georgia-Pacific mill at Port Hudson, Louisiana, fell two floors to the bottom of the pit. The accident was caused by a failure in the elevator's braking equipment, which in turn was due to the presence of an unusual amount of water that had collected in the pit when the drain became clogged with debris from the mill. The trial court directed a verdict in favor of defendant Otis. Finding no error in that disposition, we affirm.

Plaintiff Moreau was employed as an operator of a caustic kiln by Georgia-Pacific at the time the injury occurred, on January 9, 1972. Georgia-Pacific owned an Otis elevator, which its employees used in the course of performing their duties. On April 25, 1969, Georgia-Pacific and Otis entered into a written contract whereby Otis agreed to maintain the elevator and its equipment in "proper and safe operating condition." Prior to the date of the contract, in January, 1969, and in March, 1969, Otis had written two letters to Georgia-Pacific stating that Otis would not be responsible for the maintenance of the elevator pit. Although the contract itself did not address

the subject of the elevator pit directly, it did contain the following provisions:

We [Otis] shall not be required to make other safety tests nor to install new attachments on the elevators whether or not recommended or directed by insurance companies or by governmental authorities, nor to make any replacements with parts of a different design. It is agreed that *we are not required to make renewals or repairs necessitated by reason of negligence or misuse of the equipment or by reason of any other cause beyond our control* except ordinary wear and tear.

We assume no responsibility for the following items of elevator equipment which are not included in this contract: Car enclosure (including removable panels, door panels, plenum chambers, hung ceilings, light diffusers, light tubes and bulbs, handrails, mirrors and carpets); *hoistway enclosure* ; *hoistway gates, doors, frames and sills* ; cylinder plungers and buried piping on hydraulic elevators.

\* \* \* \* \* \*

Because of the conditions inherent with Paper Mills of this type it is to be understood and agreed that we will not be required to renew or repair materials that have deteriorated due to rust or corrosion or exposure to the weather.

(Emphasis added.) On several occasions after the contract was entered into and before Moreau's accident, Otis warned Georgia-Pacific that the water collecting in the elevator pit posed a danger to the equipment. Typical of these warnings was the Service Department Report of July 15, 1970, which said

WATER IN ELEVATOR PIT: At the time of our inspection there was water in the elevator pit. This should be removed and the affected elevator equipment dried, cleaned and painted or renewed if necessary. To avoid recurrence of this trouble, the pit should be waterproofed or a suitable pump or drain installed. Any damage to the elevator equipment caused

by the accumulation of water in the pit is outside the scope of our Service Contract.

The reports of February 8, 1971, and February 2, 1972, contained similar warnings.

Moreau argues on appeal that the contract did not specifically refer to maintenance of the elevator pit, and therefore that the general agreement to keep the elevator and its equipment in a safe operating condition rendered Otis responsible for the pit. Additionally, he argues that the trial judge violated the Louisiana parol evidence rule, La.Civ.Code art. 2276 (1952), when he relied on the letters of January and March 1969.

■ Although plaintiff's general statement that parol evidence is inadmissible to vary the terms of a written instrument is true, as well as his statement that ambiguities are to be construed against the party who prepared the contract, our consideration cannot stop there. In Louisiana, as is true generally,

when the terms of a written contract are susceptible of more than one interpretation, or where there is uncertainty or ambiguity as to the provisions of the contract, or where the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguities and to show the intentions of the parties.

*Capizzo v. Traders & Gen. Ins. Co.*, 191 So.2d 183, 187 (La.App.1966). *See Housing Auth. v. Fidelity & Deposit Co. of Md., Inc.*, 309 So.2d 920 (La.App.), writ ref'd, 313 So.2d 826 (La.1975); *Mandella v. Russo*, 294 So.2d 598 (La.App.1974). Additionally, the evidence in the letters subsequent to the written agreement was clearly admissible to show the scope of the agreement, or even to show a modification. *See Grossie v. Lafayette Constr. Co.*, 306 So.2d 453 (La.App.), writ denied, 309 So.2d 354 (1975).

■ Having decided that the evidence in the letters was admissible, we have no trouble in concluding under the standard of *Boeing Co. v. Shipman*, 5 Cir. 1969, 411 F.2d 365, that the district court's directed verdict for Otis was correct. Since Otis had no duty to keep the elevator pit free of water,

it could not have been negligent in failing to do so. The decision of the district court is

AFFIRMED.