| CAJUN CONTI LLC, CAJUN CUISINE 1 LLC, AND CAJUN CUISINE LLC D/B/A OCEANA GRILL | * | NO. 2021-CA-0343 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| | * | |
| VERSUS | | FOURTH CIRCUIT |
| | * | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND GOVERNOR JOHN B. EDWARDS IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA, AND THE STATE OF LOUISIANA | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-02558, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Pro Tempore Lynn M. Luker)

**BELSOME, J., DISSENTS WITH REASONS**
**LOBRANO, J., CONCURS AND ASSIGNS REASONS**
**LUKER, J., PRO TEMPORE, DISSENTS FOR THE REASONS ASSIGNED BY J., BELSOME**

John W. Houghtaling, II
GAUTHIER, HOUGHTALING & WILLIAMS, L.L.C.
3500 North Hullen Street
Metairie, LA 70002

Jennifer Perez
GAUTHIER MURPHY & HOUGHTALING, L.L.C.
3500 N. Hullen St
Metairie, LA 70002

Daniel Ernest Davillier
DAVILLIER LAW GROUP
1010 Common Street, Suite 2510
New Orleans, LA 70112

Roderick Rico Alvendia
ALVENDIA KELLY & DEMAREST, L.L.C.
909 Poydras Street, Suite 1625
New Orleans, LA 70112-4500

Jennifer L. Kuechmann
ALVENDIA, KELLY & DEMAREST, L.L.C.
909 Poydras Street, Suite 1625
New Orleans, LA 70112

James M. Williams
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM &
HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

Phillip J. Laborde
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM &
HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

Matthew A. Sherman
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM &
HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

Bernard Louis Charbonnet, Jr.
LAW OFFICES OF BERNARD L. CHARBONNET, JR.
365 Canal Street
One Canal Place, Suite 1155
New Orleans, LA 70130

Desiree Mary Charbonnet
Law Office Desiree M. Charbonnet LLC
365 Canal Street
Suite 1100
New Orleans, LA 70130

Anthony David Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130

Richard P. Lewis
REED SMITH, LLP
Three Logan Square

1717 Arch Street Suite 3100
Philadelphia, PA 19103

John N. Ellison
REED SMITH, LLP
599 Lexington Avenue
22nd Floor
New York, NY 10022


COUNSEL FOR PLAINTIFF/APPELLANT


Kyle D. Schonekas
SCHONEKAS EVANS McGOEY & McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, LA 70112

Joelle Flannigan Evans
SCHONEKAS EVANS McGOEY & McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, LA 70112

Heather S. Duplantis
PHELPS DUNBAR LLP
400 Convention Street, Suite 1100, II City Plaza
P. O. Box 4412
Baton Rouge, LA 70821-4412

Thomas H. Peyton
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130

Allen C. Miller, Sr.
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534

Virginia Y. Dodd
PHELPS DUNBAR LLP
400 Convention Street, Suite 1100
Baton Rouge, LA 70802

Kevin W. Welsh
PHELPS DUNBAR LLP
400 Convention Street, Suite 1100
Baton Rouge, LA 70802

Martin A. Stern
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

Leigh Ann Schell
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, LA 70193

Sara C. Valentine
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

Alexandra Roselli Lamb
ADAMS AND REESE, LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED**
**JUNE 15, 2022**

Cajun Conti LLC, Cajun Cuisine I LLC, and Cajun Cuisine LLC d/b/a Oceana Grill (hereinafter collectively "Oceana") filed a petition for declaratory judgment regarding an all-risks insurance policy they purchased from Certain Underwriters at Lloyd's, London (Lloyd's).  In their petition, the appellants sought a declaration that the insurance policy provided coverage for any loss or damage caused by direct physical loss of or damage to their insured premises as a result of continuous contamination by COVID-19.  Lloyd's argued that contamination due to COVID-19 did not constitute "direct physical loss or damage" and filed a motion for summary judgment, which the trial court denied.  After a bench trial, the trial court denied Oceana's petition for declaratory judgment.  Oceana subsequently appealed this judgment.

Upon review, we conclude that the insurance policy is ambiguous and capable of more than one reasonable interpretation in regards to the coverage of lost business income.  Due to the existing ambiguity in the relevant policy

1

language, the contract should be interpreted in favor of the appellants. Therefore, we reverse the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Oceana is the owner and operator of Oceana Grill in the French Quarter of New Orleans. Prior to the onset of the COVID-19 pandemic, Oceana Grill employed 200 staff members and could accommodate up to 500 guests at a time. After the emergence of the COVID-19 pandemic, on March 16, 2020, the mayor of New Orleans prohibited non-emergency public and private social gatherings and limited restaurant operations to take-out and delivery services via an emergency proclamation. As time passed, the mayor issued other proclamations facilitating the return of in-person dining at different occupancy levels. Additionally, the Centers for Disease Control ("CDC") issued guidelines and procedures for restaurants and bars to abate the spread of the contagious virus on their properties.

Oceana closed the Oceana Grill dining rooms on March 16, 2020, in compliance with the mayor's proclamation, and reopened on May 16, 2020, in keeping with updated mayoral guidelines. The guidelines envisioned a phased reopening plan based on the prevalence of COVID-19 in the city. The May re-opening of Oceana Grill was undertaken with a 75% diminishment of the property's normal capacity. Capacity increased on June 13, 2020 and on October 3, 2020, but the property still operated at 40%-45% under capacity due to the spread of COVID-19 in the city. To mitigate the spread of COVID-19 particles within its property, Oceana modified seating arrangements, decreased the number

of tables and floor area available for patrons, and implemented measures to sanitize surfaces.

On March 16, 2020, Oceana filed a petition for declaratory judgment seeking a declaration from the district court that a policy issued to it by Lloyd's covered certain losses related to the pandemic. The policy in question is an all-risks commercial insurance policy with a $91,000 premium. The policy covers losses due to "direct physical loss of or damage to" the insured property. Lost business income and extra expenses are covered for losses sustained due to necessary suspensions of the property's operations during the "period of restoration." The "period of restoration" is defined as commencing seventy-two hours after the physical loss or damage occurs and continuing until the date when the property is "repaired, rebuilt, or replaced with reasonable speed and similar quality" or when business is "resumed at a new permanent location."

Oceana's initial petition sought a declaration that the policy contained coverage "for any future civil authority shutdowns of restaurants in the New Orleans area due to physical loss from Coronavirus contamination and that the policy provides business income coverage in the event that the coronavirus has contaminated the insured premises." In subsequent amendments, Oceana sought a declaration that the policy provided coverage for any loss or damage caused by "direct physical loss of or damage to" their insured premises as a result of continuous contamination by COVID-19.

In response, Lloyd's filed a motion for summary judgment arguing that the claims are not covered because contamination due to coronavirus did not constitute "direct physical loss of or damage to" property. Lloyd's contended that the petition lacked any genuine issues of material fact and that it was entitled to summary judgment as matter of law. The trial court denied Lloyd's motion for summary judgment and held a bench trial. Following the trial, the trial court rendered judgment denying Oceana's petition for declaratory judgment. Oceana filed the present appeal.

## DISCUSSION

### *Standard of Review*

Trial courts possess great discretion in considering petitions for declaratory relief. *Deep South Center for Envtl. Justice v. Council of City of New Orleans*, 19-0774, p. 17 (La. App. 4 Cir. 2/12/20), 292 So. 3d 973, 984 (citing *Delta Admin. Servs., L.L.C. v. Limousine Livery, Ltd.*, 15-0110, p. 6 (La. App. 4 Cir. 6/17/15), 216 So. 3d 906, 910). Appellate courts review these decisions under an abuse of discretion standard. *Id.* The Louisiana Code of Civil Procedure Article 1872 authorizes the use of declaratory judgment proceedings in construing contracts.

Legal questions of contractual interpretation are subject to *de novo* review by appellate courts. *Armstrong Airport Concessions v. K-Squared Restaurant, LLC*, 15-0375, p. 9 (La. App. 4 Cir. 10/28/15), 178 So. 3d 1094, 1101 (citing *Subervielle v. State Farm Mut. Auto. Ins. Co.*, 08-0491, p. 2 (La. App. 4 Cir. 1/7/09), 32 So. 3d 811, 812). "Appellate courts apply the 'manifest error' or

4

'clearly wrong' standard when reviewing a trial court's findings of fact."

*Greenblatt v. Sewerage & Water Board of New Orleans*, 19-0694, p. 3, (La. App. 4 Cir. 12/20/19), 287 So. 3d 763, 766 (citing *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989) (citations omitted)).

"Thus, applying these precepts to the case *sub judice*, this Court must determine whether the district court abused its discretion in granting the declaratory judgment and whether the district court's review and analysis of the contract was legally correct." *Brady v. Pirner*, 18-0556, p. 11 (La. App. 4 Cir. 12/5/18), 261 So. 3d 867, 874-75.

Insurance policies should be interpreted under ordinary rules of contract interpretation. *Sumner v. Mathes*, 10-0438, p. 5 (La. App. 4 Cir. 11/24/10), 52 So. 3d 931, 934 (citing *Peterson v. Schimek*, 98-1712, pp. 4-5 (La. 3/2/99), 729 So. 2d 1024, 1028-29). The rules of contractual interpretation are laid out in the Louisiana Civil Code. Pursuant to La. C.C. art 2047, the "words of a contract are given their generally prevailing meaning", while "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." The words used in insurance policies are to be interpreted "in their plain, ordinary and popular sense." *Central Louisiana Elec. Co., Inc. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 986 (La. 1991) (citing *Muse v. Metropolitan Life Ins. Co.*, 193 La. 605, 192 So. 72 (La. 1939)).

"Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. C.C. art 2048. "A

5

doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. C.C. art. 2053.

If a contractual provision is susceptible of different meanings, it "must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. C.C. art 2049. In other words, "[i]nsurance policies should be construed to effect, rather than to deny coverage." *Davis v. Nola Home Construction, L.L.C.*, 16-1274, p. 14 (La. App. 4 Cir. 6/14/17), 222 So. 3d 833, 844 (citing *Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 6 (La. 5/22/07), 958 So. 2d 634, 638). However, efforts to interpret insurance contracts must not be undertaken in "an unreasonable or strained manner" so as to "enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms." *Sumner*, 10-0438, p. 5, 52 So. 3d at 934 (citing *Rolston v. United Services Automobile Ass'n*, 06-0978, p. 4 (La. App. 4 Cir. 12/13/06), 948 So. 2d 1113, 1117).

A contractual term is "not automatically considered ambiguous merely because it is not defined in the contract." *Sumner*, 10-0438, p. 6, 52 So. 3d at 935. "However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage." *Supreme Services*, 06-1827, p. 6, 958 So. 2d at 638 (citing *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183;

6

*Newby v. Jefferson Parish Sch. Bd.*, 99-0098 (La. App. 5 Cir. 6/1/99), 738 So. 2d 93).

Additionally, when a contractual term is adjudged to be ambiguous, parole evidence becomes admissible "to clarify the ambiguity and to show the intention of the parties. *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981) (citing *White v. Rimmer & Garrett, Inc.*, 340 So. 2d 283 (La. 1976); *Gulf States Finance Corp. v. Airline Auto Sales, Inc.*, 248 La. 591, 181 So. 2d 36 (1965); *Moreau v. Otis Elevator Co.*, 531 F. 2d 311 (5th Cir. 1976)).

"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Snider v. Louisiana Medical Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So. 3d 319, 323 (citing *Rosell v. ESCO*, 549 So. 2d 840, a844 (La. 1989)). The appellate court must review the entirety of the record to evaluate "whether the fact-finder's conclusion was a reasonable one." *Id.* (citing *Clay v. Our Lady of Lourdes Regional Medical Center*, 11-1797 (La. 5/8/12), 93 So. 3d 536, 543).

### Assignments of Error

In their first assignment of error, the appellants claim that the district court erred in concluding that their premises did not sustain a direct physical loss or damage under the terms of the contract as a result of continuous contamination by the COVID-19 coronavirus. In their second assignment of error, the appellants argue, in the alternative, that the district court erred in concluding that the commercial property policy that the appellee drafted and sold to Oceana was not

7

ambiguous. The appellants further argue that this ambiguity requires the court to liberally construe the policy in favor of coverage.

The question posed by the appellants in their first assignment of error is a factual one, subject to the manifest error/clearly wrong standard of review. *Gordon v. Gordon*, 16-0008, p. 2 (La. App. 4 Cir. 6/8/16), 195 So.3d 687, 688-89 (citing *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So. 2d 90, 98). However, the question of whether ambiguity exists in the policy terms is a legal question requiring an examination of the contractual language and subject to *de novo* review. *Armstrong Airport Concessions*, 15-0375, p. 9, 178 So. 3d at 1101 (citation omitted). These two assignments of error were propounded in the alternative. We focus on the question of ambiguity, as we believe it resolves the matter at hand.

The policy at issue is an "all-risk" commercial insurance policy that covered the appellants' loss of business income sustained due to necessary "suspension" of operations during the "period of restoration." The "suspension" must be caused by "direct physical loss of or damage to the property." "All-risk" insurance policies cover all risks "unless clearly and specifically excluded." *Widder v. Louisiana Citizens Prop. Ins. Corp.*, 11-0196, p. 4 (La. App. 4 Cir. 8/10/11), 82 So. 3d 294, 296, *writ denied*, 11-2336 (La. 12/02/11), 76 So. 3d 1179. The policy does not define "direct physical loss" or "damage."

The Supreme Court of Louisiana has previously defined the meaning of "direct," in relation to "loss or damage" in an insurance contract, as signifying

8

"immediate or proximate as distinguished from remote." *Central Louisiana Elec. Co., Inc.*, 579 So. 2d at 985 n. 8 (citing *Lorio v. Aetna Ins. Co.*, 255 La. 721, 232 So. 2d 490 (1970)). The appellants discussed this Court's examination of what constitutes "direct physical loss of or damage to the property" in *Widder v. Louisiana Citizens Prop. Ins. Corp.*, a residential lead contamination case.

*Widder* held that physical damage was not necessary to trigger coverage in a homeowner policy because the insured property was "rendered unusable or uninhabitable." *Widder*, 11-0196, p. 4, 82 So. 3d at 296 (citing *In re Chinese Manufactured Drywall Products Liability Litigation*, 759 F. Supp. 2d 822 (E.D. La. 2010); *Ross v. C. Adams Construction & Design*, 10-852 (La. App. 5 Cir. 6/14/11), 70 So. 3d 949). *Widder's* holding relies on a line of defective drywall cases wherein drywall installed on insured property was physically intact, but its inherent defects required that it be replaced in order for the property to be usable. The appellee asserts that *Widder* and associated drywall cases do not apply to the facts herein because the appellants continued operations with employees and some patrons, and the property was not uninhabitable or useless as it was in *Widder* and the drywall cases.

However, the policy covers the loss of business income due to necessary "suspension" of operations caused by "direct physical loss of or damage to the property." "Suspension" is defined in the policy as the "slowdown or cessation of your business activities." Therefore, under the terms of the contract, the complete cessation of operations and an uninhabitable property are not prerequisites to

9

payment for business losses suffered due to the suspension of operations caused by "direct physical loss of or damage to the property." Suspension includes the slowdown of business activities, which occurred here, as well as the complete cessation of business operations which occurs when a property is entirely uninhabitable.

The appellee also argues that *Widder's* holding is inapposite because this matter deals with a business property policy, not a homeowner policy, and a viral contagion, not defective drywall. However, it is possible to review conceptual commonalities between different types of insurance policies without inappropriately extending a court's holding. The central inquiry remains focused upon "the words of the contract" itself. *See* La. C.C. art 2047. "Most importantly, a contract 'must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance.'" *Prejean v. Guillory*, 10-0740, p. 7 (La. 7/2/10), 38 So.3d 274, 279 (quoting *Lambert v. Maryland Cas. Co.*, 418 So. 2d 553, 559 (La. 1982)).

The appellee notes that the insurance policies in the drywall cases "all define 'property damage' to include loss of use of tangible property." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 832 (E.D. La. 2010). The appellee argues that this language is distinct from the present case, where the loss itself must be "physical." The appellee points to recent cases in other jurisdictions that have interpreted "physical" in relation to coronavirus claims

10

as requiring a tangible or corporeal loss of property or damage. The cases referenced by the appellee are not binding upon this Court.

Moreover, many cases in other jurisdictions have reached a contrary conclusion and extended coverage to losses arising from disease-causing agents with a tangible physical form but which are, nevertheless, not discernible with the naked human eye. *See Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235-36 (3d Cir. 2002) (holding that "physical loss or damage" exists if asbestos fibers contaminate the insured property such that it is uninhabitable, or if there is an imminent threat of the release of a quantity of asbestos fibers that would cause a loss of utility"); *See Farmers Ins. Co. of Or. v. Trutanich*, 123 Or. App. 6, 858 P.2d 1332, 1335 (1993) (finding that odor is a "physical" trait because it damaged the insured property and concluding that the "cost of removing the odor is a direct physical loss"); *See Matzner v. Seaco Ins. Co.*, No. CIV. 96-0498-B, 1998 WL 566658, at *4 (Mass. Super. 1998) (ruling that "carbon-monoxide contamination constitutes 'direct physical loss of or damage to' property"). This Court, in *Widder,* joined this line of cases extending coverage for a broader array of losses caused by disease-causing agents with a tangible, but microscopic, physical form.

The appellee further contends that this Court has previously rejected the argument that "physical loss of or damage to" was ambiguous in a business interruption suit. *Yount v. Lafayette Ins. Co.*, 08-0380 (La. App. 4 Cir. 1/28/09), 4 So. 3d 162. In *Yount*, a doctor sued for property damage and economic losses

suffered after her medical office was damaged in Hurricane Katrina. *Id.*, 08-0380, p. 3, 4 So. 3d at 165. The policy provided coverage for lost business income due to suspension of business activities "caused by direct physical loss of or damage to property." *Id.*, 08-0380, p. 4, 4 So. 3d at 166. The doctor argued that the policy language was ambiguous because it could be "interpreted to mean the plaintiff need only suffer damage to the insured property, not necessarily direct or physical." *Id.*, 08-0380, p. 9, 4 So. 3d at 168. The doctor took the position that in the policy provision requiring "physical loss of or damage to the property," the words "direct physical" only modified "loss," and not "damage." *Id.*

This Court held that "the policy provision at issue to be clear and unambiguous as applied under the facts of this case." *Id.*, 08-0380, p. 10, 4 So. 3d at 169 (emphasis added). Consequently, *Yount* does not stand for the proposition that the terms "physical loss of or damage to" are not ambiguous. Rather, the Court held that, under the facts of that case, and in the context of the specific ambiguity argument proffered by the policyholder in *Yount*, the terms were not ambiguous. *Id.*

Under the facts of this viral contagion case, an equal level of clarity is absent. One reasonable interpretation of the provision is that suspension of business operations due to "direct physical loss of or damage to the property" means the loss of the property's full use, as the appellants argue. In this case, the appellants were unable to fully utilize the insured property due to the viral particles inside the property. The physical presence of these viral particles necessitated

12

diminished capacity, constant decontamination efforts, and caused a slowdown of their business.

The appellants closed their dining rooms on March 16, 2020, and reopened on May 16, 2020. They reopened with a 75% diminishment of the restaurant's capacity due to the prevalence of COVID-19, in compliance with government mandates. Capacity increased on June 13, 2020 and on October 3, 2020, but the property still operated at 40%-45% under capacity due to the ongoing omnipresence of the coronavirus.

The appellants presented the testimony of Doctor Lemuel Moye, accepted as an expert in general medicine, biostatistics, epidemiology, and virology. Dr. Moye found that there was an "overwhelming probability" that there were people in the restaurant infected with COVID-19 at all times relevant to this suit. Dr. Moye further testified that viral particles can remain in the air for over an hour and can contaminate surfaces.

Although the appellee's expert witness testified that there have been no known infections caused by interactions between humans and an inanimate surface, the appellants demonstrated that contagion-causing viral particles persisted in the air of the premises. The physical presence of COVID-19 substantially diminished the usable space of the property, as tables needed to be pushed farther apart, and resulted in economic losses due to the slowdown of the appellants' business. Stated differently, the physical presence of infectious viral particles

decreased the habitable portion of the insured property and caused a slowdown of business activities.

Another reasonable interpretation of the provision is that the suspension of business operations due to "direct physical loss of or damage to the property" requires the full loss of the property's use, a situation distinct from the loss of the property's full use. Under this scenario, the appellants would have had to shut down their restaurant completely for some period of time in order to qualify for coverage.

"Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, (La. 1/01/94), 630 So. 2d 759, 763-64. The policy under review in this case is an "all-risk" policy, "where all risks are covered unless clearly and specifically excluded." *Widder*, 11-0196, p. 4, 82 So. 3d at 296 (citing *Morgan v. Auto Club Family Ins. Co.*, 04-1562, p. 4 (La. App. 3 Cir. 4/6/05), 899 So. 2d 135, 137; *Dawson Farms, L.L.C. v. Millers Mut. Fire Ins. Co.*, 34,801, p. 3 (La. App. 2 Cir. 8/1/01), 794 So. 2d 949, 950). Additional context is provided in the policy's definition of "suspension", which includes both a "slowdown" and a "cessation" of business activities." The words of the policy foresee a situation in which business losses can be covered by less than the complete destruction of the property or less than the complete loss of the property's utility. Construing the policy as a whole does not resolve the ambiguity inherent in "loss" for viral

contagions, as the dual definition of suspension allows for both reasonable interpretations of loss.

Reference to external definitions of "loss" accentuate the ambiguity. Loss is defined in one dictionary as "the fact that you no longer have something or have less of something."[1] Another dictionary provides that loss is the "destruction, ruin," "the act or fact of being unable to keep or maintain something or someone," and "the partial or complete deterioration or absence of a physical capability or function."[2]

The presence of this ambiguity and the existence of two equally reasonable interpretations as to what constitutes a "direct physical loss of or damage to" the insured property requires the Court to liberally construe the provision in favor of coverage for the appellants and against the appellee, who drafted the vague provision. La. C.C. art 2056; *Edwards v. Daugherty*, 03-2103, p. 22 (La. 10/1/04), 883 So. 2d 932, 947 (finding ambiguity in a provision regarding the burden of defense costs and expenses and barring the insurer from deducting defense costs); *Osbon v. Nat'l Union Fire Ins. Co.*, 93-1975, p. 2 (La. 2/28/94), 632 So. 2d 1158, 1159-60 (finding ambiguity in the phrase "the insured" because it could refer to the named insured, any insured as defined in the policy, or the particular insured seeking coverage); *Garcia v. St. Bernard Parish School Bd.*, 576 So. 2d 975, 976 (La. 1991) (concluding that an exclusionary provision for sports contests was

---

[1] *Loss Definition*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/loss (last visited June 9, 2022).
[2] *Loss Definition*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/loss (last visited June 9, 2022).

ambiguous because it could reasonably be interpreted as not clearly excluding injuries sustained while cheerleading at a football game).

Even if coverage is found to exist, the appellee argued that the only compensable lost income under the policy is that which falls within the "period of restoration." The appellee contends that the appellants did not experience a "period of restoration" and, as a result, are unable to recover any alleged lost income. The "period of restoration" is defined as the period of time beginning seventy-two hours after the time of the loss or damage and ending the earlier of either (1) when the property is repaired, rebuilt or replaced with reasonable speed and similar quality, or (2) the date when business is resumed at a new, permanent location.

It is unclear what would constitute "repair" in light of a viral outbreak. Repair is defined as "to restore by replacing a part or putting together what is torn or broken" and "to restore to a sound or healthy state."[3] It could be that the "period of restoration" provision requires the wholesale and permanent repair of physical objects within the property. However, under the plain meaning of "repair", it is equally plausible that some portion of the cycle of cleaning and decontamination fulfills the definition of restoring the property to a healthy state.

Given the existence of multiple plausible interpretations of these two provisions, the policy is ambiguous as to what constitutes a covered "direct

---

[3] *Repair Definition*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/repair (last visited March 24, 2022).

physical loss of or . . . to the property" and coverage should, therefore, be construed in favor of the appellants.

Furthermore, the ambiguity of the provision now renders parole evidence admissible to clarify the ambiguity or show the parties' intent. *Succession of Barreca v. Weiser*, 10-0574, p. 16 (La. App. 4 Cir. 11/3/10), 53 So. 3d 481, 491. "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Breland v. Schilling*, 550 So. 2d 609, 610-11 (La. 1989). Examining the evidence introduced by the appellants,[4] it is apparent that at the time that the policy was issued, viral exclusions which eliminated the insurer's liability for loss or damage caused by a virus were available on the market. However, the appellee did not include a viral exclusion in the policy it drafted and sold to the appellants. Additionally, the appellants' general manager testified that he would not have bought a policy that excluded coverage for viruses or bacteria because the business sold raw oysters to customers. His testimony provides insight regarding how the appellants reasonably construed the policy at the time of its purchase. This evidence strengthens the equity of construing coverage in favor of the appellants, pursuant to La. C.C. art. 2053.

Application of the ordinary rules of contract interpretation reveals the ambiguities present in the insurance policy that the appellee drafted and sold to the

---

[4] Although the trial court did not issue reasons for its judgment, the fact that it allowed this otherwise impermissible evidence to be introduced over the objections of the appellee suggests that it also found the provision to be ambiguous, and ultimately admitted it as parole evidence.

appellants. The ambiguities are amplified by the presence of two equally reasonable interpretations as to what constitutes a "direct physical loss of or damage to" the insured property and the subsequent "repair" of the insured property. Thus, this Court is compelled to liberally construe the provision in favor of coverage for the appellants and against the appellee, who drafted the vague provision. Accordingly, we conclude that the trial court committed legal error in finding that the insurance policy was not ambiguous and hold that the trial court abused its discretion in denying the declaratory judgment.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and hold that coverage exists for loss or damage caused by "direct physical loss of or damage to" the appellants' insured premises as a result of contamination by COVID-19.

**REVERSED**